UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

KEVIN PHILLIPS DONNELLY,                    CIVIL NO. 10-3105 (DWF/JSM)

      Petitioner,

v.                                          **REPORT AND RECOMMENDATION**

THE FEDERAL BUREAU OF PRISONS,
HARLEY LAPPIN, Director, and Warden
SCOTT P. FISHER, of Federal
Correctional Institution – Sandstone,

      Respondents.

---

      Kevin Phillips Donnelly, Federal Correctional Institution - Sandstone, P.O. Box 1000, Sandstone, Minnesota, 55072, Petitioner, pro se.

      Mary Jo Madigan, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Respondents.

---

JANIE S. MAYERON, United States Magistrate Judge

      This matter is before the undersigned Magistrate Judge of the District Court on the petition of federal prisoner Kevin Phillips Donnelly for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Respondents have filed a response (Docket Nos. 6 and 7), contending that the Petition should be denied.  That response has not been opposed by Petitioner.

      The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court finds that Petitioner's habeas corpus petition should be DENIED, and this action should be DISMISSED WITH PREJUDICE.

I.      **BACKGROUND**

Petitioner is a prisoner at the Federal Correctional Institution in Sandstone, Minnesota, ("FCI-Sandstone").  He is serving a 108-month prison sentence imposed by the United States District Court for the Northern District of Iowa, following his conviction for possessing pseudoephedrine for the purpose of manufacturing methamphetamine.

Petitioner is presently seeking a writ of habeas corpus that would restore 27 days of lost good-time credit.  The Bureau of Prisons ("BOP") deprived Petitioner of that good-time credit to punish him for violating prison rules pertaining to telephone calls.  The relevant rule, which is part of BOP Program Statement ("PS") 5264.08, provides that --

> To ensure the safety and security of the institution and community, inmates must place all personal telephone calls through the ITS [Inmate Telephone System] and must not circumvent it via call forwarding, including automatic electronic forwarding or any similar telephone function.

In January 2010, the BOP issued a "Memorandum for Wardens" that provided updated guidance regarding the interpretation and application of PS 5264.08.  (Declaration of Ann C. Kinyon, ( "Kinyon Decl.") [Docket No.  7], Attachment 2).  The Memorandum to Wardens explained that various private companies were trying to enlist prisoners, and their families and friends, to place telephone calls in and out of prisons by using a computer technology known as Voice Over Internet Protocol, ("VOIP").  By using a VOIP service, prisoners can avoid long distance telephone charges.  Instead of making a direct long distance call to a person far away, a prisoner can make a local call to a company providing a VOIP service, and the call can then be relayed over the internet to the person far away. However, as the Memorandum to Wardens pointed out, when telephone calls are made via VOIP, the BOP is often unable to identify the number of the person who ultimately receives the call.  Therefore, the use of a VOIP service interferes with the BOP's ability to monitor

prisoner phone calls through the Inmate Telephone System ("ITS").

The Memorandum to Wardens advised federal prison officials to warn prisoners against using VOIP services.  Prison officials were further advised to investigate prisoners trying to use VOIP, and discipline any prisoner who knowingly disregarded a warning about the use of VOIP services.

On or about January 22, 2010, the Warden at FCI-Sandstone issued a "Memorandum For Inmate Population," (Kinyon Decl., Attachment 3, p. 14), which cautioned inmates not to use VOIP services to place long distance telephone calls. Inmates were expressly warned:

> If staff determine the destination telephone number is assigned to [a VOIP] service provider itself, rather than an individual or authorized entity, the above referenced policy [namely PS 5264.08] is violated.  Inmates may be subject to disciplinary action.

(Id.)

On or about March 24, 2010, Petitioner was caught trying to place a long distance call to his wife through a VOIP service.  He acknowledged that he called his wife by using a number that was not his wife's phone number.  Petitioner was accused of trying to evade the ITS, which allows the BOP to identify the recipients of phone calls placed by inmates. The regulation that Petitioner was accused of violating, codified at 28 C.F.R. § 541.13, Table 3 ("Prohibited Acts and Disciplinary Severity Scale"), Code 297 (2010), prohibited "circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls, conference calling; talking in code."[1]

---

[1] Sometime after Petitioner was disciplined for violating Code 297, that part of the regulations was amended.  The current version of Code 297, which is now part of 28 C.F.R.

A Unit Disciplinary Committee ("UDC"), found that Petitioner had violated Code 297, and referred the matter to a Disciplinary Hearing Officer, "DHO" for a disciplinary hearing. (Kinyon Decl., Attachment 3, pp. 5-6.)  A formal disciplinary hearing was held on April 22, 2010.  (Id., pp. 2-3.)  Petitioner did not call any witnesses at the hearing, but made a statement, which the DHO summarized as follows:

> My wife got this number to save money.  We were not trying to hide anything, just save money.  I shouldn't have let my wife do it.  I was wrong by the way I handled it.

(Id., p. 2.)

Based on the information and accusations presented in the incident report, the DHO found Petitioner guilty of a Code 297 violation "Use of the Telephone For Abuses Other Than Criminal Activity."  (Id., p. 3.)  The DHO's report noted that "use [of] the telephone in an unauthorized manner poses a serious threat to the ability of staff to control the use of the telephone and monitor whether inmates are making calls for prohibited or illegal purposes."  (Id.)  The disciplinary sanctions imposed by the DHO included 27 days of lost good time credits, as well as loss of commissary privileges for 30 days, and loss of phone privileges for 60 days.  (Id.)

Petitioner challenged the DHO's decision by filing a timely administrative appeal with the BOP's Regional Office, but that appeal was denied.  (Kinyon Decl., p. 4, ¶ 8.) Petitioner did not complete the BOP's administrative remedy process by seeking further review of the DHO's decision in the BOP's Central Office.  (Id.)  Thus, as Petitioner has candidly acknowledged, he "has not exhausted his administrative remedies."  (Petition, p. 2.)

---

§ 541.3, prohibits the following: "Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act."

Instead of completing the BOP administrative remedy process, Petitioner filed his current habeas corpus petition.  His Petition presents a list of unsupported arguments challenging the DHO's decision on the "Code 297" disciplinary charges that were brought against him for his misuse of a VOIP service.[2]

_____

[2]  Among the litany of claims listed in the Petition are the following:

"7.     Regional offices of the BOP and the Correctional Facilities refuse to comply with the above guidelines [which are never clearly identified] and arbitrarily institute sanctions and punishments without determining if the [telephone] numbers do indeed violate Bureau policy, thus causing irreparable harm to Plaintiff.

8.     The Federal Bureau of Prisons has refused to enforce its own regulations throughout the federal prison system, thus violating the rights of the inmates, including Plaintiff entrusted to their care.

9.     Plaintiff's family member and/or friend has a FCC regulated interconnected VoiP service provider (ConsCallHome) for her personal telephone use.  This telephone number shows the end user of the number as the recipient, does not 'mask' the number, and therefore does not violate Bureau policy according to the BOP Memorandum for Wardens dated January 7, 2010.

10.     Plaintiff avers that Defendants' policy subjecting Plaintiff to disciplinary proceedings for the perfectly legal conduct of individuals not under Defendants' control is an outrageous abuse of Defendants' authority in violation of the 4th, 5th, and 8th amendments of the United States Constitution and in plain violation of federal rules and regulations governing telecommunications.

11.     Plaintiff avers that Defendants have no right to dictate to friends and/or families of inmates which telephone services they chose to subscribe for their personal phone service.

12.     Plaintiff avers that Defendants' policy undermines Congress' stated goal of universal broadband access.

13.     Plaintiff avers that Defendants' policy will bar inmates from reaching nearly half of all households in the United States by next year based on the projected number of Voice over Internet Protocol (VoiP) users.

14.     Plaintiff avers that Defendants' policy punishes inmates for situations

Respondents contend that this action must be summarily dismissed, without

addressing any of Petitioner's claims on the merits, because of Petitioner's failure to

exhaust his administrative remedies.  The Court agrees.[3]

they have no knowledge of and therefore cannot know they are potentially
violating a BOP regulation.

15.    Plaintiff avers that Defendants cannot subject Plaintiff to disciplinary
procedures for how his friends and/or families use any particular telephone
services."

(Petition, pp. 2-3.)

Respondents undoubtedly found it difficult to comprehend Petitioner's diffuse array
of claims.  They assumed that Petitioner must be claiming that he was denied due process
during the course of his prison disciplinary proceedings, and they responded accordingly.
(See Government Response To Petition For Writ of Habeas Corpus Pursuant To 28 U.S.C.
§ 2241, [Docket No. 6], pp. 13-20.)  This was a reasonable assumption about Petitioner's
intentions, because prisoners commonly claim that they were denied due process during
disciplinary proceedings.  In truth, however, Petitioner has not raised a due process claim
in his petition.  Although the Petition includes a passing reference to the Fifth Amendment,
(Petition, p. 3), it does not actually present any identifiable due process claim.

    [3]  It appears that Petitioner might be seeking some relief in this action other than the
restoration of his 27 days of lost good time credit.  His Petition indicates that he is seeking
an order that would "reinstate all 27 days of good time lost," and would also require
"Defendants to immediately end the policies and practices prohibiting inmates' friends and
families from subscribing to the telephone service of their choice."  (Petition, p. 4, "Relief
Sought.")  Petitioner's request for reinstatement of his lost good time credits can properly
be raised in a habeas corpus proceeding.  Indeed, that is the only appropriate means of
seeking relief that would reduce the duration of his prison term.  Heck v. Humphrey,
512 U.S. 477, 481 (1994); Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973).  However,
no other relief could be granted in the present habeas corpus proceeding.  As our Court of
Appeals has explained:

If the prisoner is not challenging the validity of his conviction or
the length of his detention, such as loss of good time, then a
writ of habeas corpus is not the proper remedy.  [Citation
omitted.]... Where petitioner seeks a writ of habeas corpus and
fails to attack the validity of his sentence or the length of his
state custody, the district court lacks the power or subject
matter jurisdiction to issue a writ.

Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam) (citation omitted).  See
also Taylor v. Roal, Civil No. 10-3588 (PJS/JJG) (D.Minn. 2010), 2010 WL 4628634 at *5

## II.    DISCUSSION

It is well settled that federal prisoners must exhaust their available administrative remedies before seeking federal habeas corpus relief under 28 U.S.C. § 2241.   United States v. Chappel, 208 F.3d 1069, 1069-70 (8th Cir. 2000) (per curiam); Kendrick v. Carlson, 995 F.2d 1440, 1447 (8th Cir. 1993); Leighnor v. Turner, 884 F.2d 385, 387 (8th Cir. 1989); Willis v. Ciccone, 506 F.2d 1011 (8th Cir. 1974); United States v. Sithithongtham, 11 Fed.Appx. 657, 658 (8th Cir. 2001) (per curiam) (unpublished opinion). The Eighth Circuit Court of Appeals has identified four important objectives that are promoted by the exhaustion requirement.   First, exhaustion helps to ensure a more complete development of the factual record before the matter is brought into federal court. Second, exhaustion gives the reviewing court the benefit of whatever special knowledge and experience the administrative agency may have to offer.   Third, the exhaustion requirement acknowledges the autonomy of administrative agencies, and the authority that Congress has vested in them.   Finally, to the extent that claims can be resolved at the administrative level, the exhaustion requirement promotes judicial economy.   Mason v. Ciccone, 531 F.2d 867, 870 (8th Cir. 1976). See also, McCarthy v. Madigan, 503 U.S. 140, 145 (1992) (discussing rationale for exhaustion of administrative remedies requirement).

If a prisoner deprives prison officials and the courts of the benefits of the administrative remedies process, by failing to pursue his administrative remedies in a proper and timely manner, his claims are procedurally defaulted.   Carmona v. United States

---

(when a federal prisoner's "claims do not challenge the fact or duration of his confinement, they may not be brought in a habeas petition, and his petition for a writ of habeas corpus must be dismissed").   Thus, to the extent that Petitioner may be seeking some relief other than restoration of his 27 days of lost good time credit, his claims cannot be entertained in the present habeas corpus proceeding.

Bureau of Prisons, 243 F.3d 629, 633-34 (2nd Cir. 2001) (prisoner's § 2241 habeas claims were procedurally defaulted because he "did not fully pursue the appropriate administrative channels within the federal Bureau of Prisons following the disciplinary hearing"); Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760-61 (3rd Cir. 1996) (prisoner claim procedurally defaulted where prisoner's final BOP appeal was untimely); Nigro v. Sullivan, 40 F.3d 990, 997 (9th Cir. 1994) (federal habeas petitioner's claims were procedurally defaulted, because he failed to file his administrative appeal in a timely manner); Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990) (procedural default occurred where prisoner did not appeal warden's decision, and deadline for such appeal expired before habeas petition was filed); Sanchez v. Miller, 792 F.2d 694, 697-99 (7th Cir. 1986) (prisoner claim procedurally defaulted where prisoner did not complete administrative appeal process before seeking habeas relief, and the deadline for completing that process expired before habeas petition was adjudicated), cert. denied, 479 U.S. 1056 (1987). See also Hach v. Anderson, 191 Fed. Appx. 511, 512 (8th Cir.2006) (unpublished opinion) (affirming district court's decision that petitioner had procedurally defaulted "by not timely exhausting his administrative remedies").[4]

Procedurally defaulted claims will not be entertained in federal court, unless the prisoner is able to show "cause" for his default, and that actual prejudice will result if his claims are procedurally barred. Carmona, 243 F.3d at 634; Francis, 894 F.2d at 355, n. 2; Moscato, 98 F.3d at 761-62; Sanchez, 792 F.2d at 697-99. In order to satisfy the "cause"

---

[4] In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that a prisoner's civil rights claims are procedurally defaulted if he does not exhaust his administrative remedies in a proper and timely manner. Although the Woodford decision is not directly applicable to § 2241 habeas corpus claims, it certainly adds weight to the many lower court decisions that have applied the doctrine of procedural default in § 2241 habeas corpus cases.

requirement to overcome a procedural default, a prisoner must show that some "external impediment" prevented him from exhausting his administrative remedies in a proper and timely manner.  Moscato, 98 F.3d at 762 (petitioner could not satisfy cause requirement where he failed "to allege the existence of an external impediment," or that "anything other than [his own] dilatoriness caused the [administrative] appeal to be filed late").  "'[C]ause' under the cause and prejudice test is something external to the petitioner, something that cannot fairly be attributed to him...; [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available... or that some interference by officials made compliance impracticable.'"  Coleman v. Thompson, 501 U.S. 722, 753 (1991) (emphasis in original), quoting Murray v. Carrier, 477 U.S. 478, 488 (1986).

In this case, Petitioner failed to exhaust his administrative remedies with respect to the claims raised in his current habeas corpus petition because he did not seek administrative review of those claims in the BOP's Central Office.  See 28 C.F.R. §§ 541.19, 542.15 (2010).  Indeed, Petitioner has candidly acknowledged his failure to exhaust his administrative remedies.  (Petition, p. 2, ¶ 5.)  Furthermore, Petitioner's current claims for relief have been procedurally defaulted for federal habeas purposes because it is now too late for him to seek further administrative review of his unexhausted claims.  28 C.F.R. § 542.15(a) (2010) (Appeals to the Central Office must be taken within 30 days after a decision by the Regional Office).

Petitioner contends that he should be excused from the exhaustion of administrative remedies requirement because it would have been "futile" to complete the administrative remedies process.  (Petition, p. 2, ¶ 5.)  He claims that exhaustion would have been futile because (a) he is challenging the validity of a BOP policy, (b) his claims for relief would have become moot before the administrative remedies process would have been

completed, and (c) he would have risked the possibility of "irreparable harm" if he had completed the administrative remedies process before seeking relief in federal court. (Id.) The Court finds that Petitioner's futility arguments are inadequate and unsustainable.

Petitioner has made no effort to explain why he supposedly should be excused from the exhaustion of administrative remedies requirement simply because he is challenging the validity of a BOP policy.  One of the primary purposes of the exhaustion requirement is to develop the relevant factual and legal issues.  The administrative remedies process hones the factual record, and brings clarity to the legal issues presented in the case.  See Porter v. Nussle, 534 U.S. 516, 525 (2002) ("for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy"), McCarthy, 503 U.S. at 146 ("where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context").

In this particular case, development of the record during the administrative remedies process would have been especially beneficial, because Petitioner would have been compelled to identify the specific legal grounds for his objections to the DHO's decision. Without the benefit of a complete administrative record, it is impossible to discern just exactly why it is that Petitioner believes he was wrongly disciplined.

The lack of a complete administrative record is particularly problematic in this case because Petitioner did not submit his current habeas corpus petition on the form approved for use in this District, as required by Local Rule 9.3 and Rule 2(d) of the Rules Governing Section 2254 Cases In The United States District Court.[5]  The prescribed habeas corpus

---

[5]  Local Rule 9.3 requires that "[p]etitions for a Writ of Habeas Corpus, whether brought by a state or federal prisoner... shall be submitted for filing in a form which is

petition form would have directed Petitioner to identify each individual claim for relief, and explain the factual and legal bases for each such claim.  Unfortunately, Petitioner's self-styled habeas petition presents only a disjointed list of conclusory allegations.  (See n. 2, supra.)  None of Petitioner's arguments is clearly explained, and none of them is supported by any facts or any legal authority.  Those critical omissions might have been avoided if Petitioner had refined his claims for relief, and presented them more thoroughly and thoughtfully, while exhausting his administrative remedies.

Thus, the Court rejects the notion that Petitioner should be excused from the exhaustion of administrative remedies requirement simply because he is challenging a BOP policy.  Indeed, it is evident that Petitioner's challenge to the BOP's VOIP policy should have been fine-tuned and vetted before being brought into federal court.  See Rivero v. Fisher, Civil No. 10-3045 (SRN/JJK) (D.Minn. 2011), (Report and Recommendation dated February 18, 2011; Keyes, M.J.), 2011 WL 1262139 at *4 ("Given the fact that this is likely to be one of the only cases testing the prison's new policy prohibiting VoIP calls, it make all the more sense for the administrative appeals process to run its course before any federal court review of a § 2241 petition").  Because Petitioner's claims did not undergo the rigors of the full administrative review process, his current challenge to the BOP's VOIP policy is unfocused, unsupported and largely incomprehensible.  The Respondents and the

---

substantially in compliance with forms available from the Clerk of Court."  Rule 2(d) of the Governing Rules requires that "[t]he petition must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule."  (Although The Rules Governing Section 2254 Cases are most directly applicable to habeas petitions filed by state prisoners pursuant to 28 U.S.C. § 2254, they also may be applied to habeas cases brought under 28 U.S.C. § 2241.  Rule 1(b); Mickelson v. United States, Civil No. 01-1750 (JRT/SRN), (D.Minn. 2002), 2002 WL 31045849 at *2.  See also Bostic v. Carlson, 884 F.2d 1267, 1270, n.1, (9th Cir. 1989); Rothstein v. Pavlick, No. 90 C 5558 (N.D.Ill. 1990), 1990 WL 171789 at *3.)  Petitioner did not comply with these rules, but instead presented his claims in a wholly self-styled habeas corpus petition.

Court have been deprived of one of the primary benefits of the administrative remedies process – clarification of the factual and legal issues presented for judicial review.

The Court also rejects Petitioner's contention that his claims would have become moot, and he would have suffered "irreparable harm," if he had exhausted his administrative remedies before seeking relief in federal court.  As Respondents have correctly pointed out, the 27 days of lost good time credit at issue in this case will not affect Petitioner until he reaches the last 27 days of his prison term.[6]  Only then will Petitioner's lost good time credits affect the actual duration of his confinement.  Petitioner's projected release date is February 4, 2014, so his lost good time credits will not extend his imprisonment until 27 days before that date – i.e., on or about January 8, 2014.

In other words, the DHO decision at issue in this case was delivered to Petitioner on June 28, 2010, (Kinyon Decl., Attachment 3, p. 3), but the critical impact of that decision, (i.e., the loss of 27 days of good time credit), will not come to fruition until January 2014. Petitioner has more than three-and-one-half years before his claims would become "moot" and he would suffer "irreparable harm" from the DHO's decision.  If Petitioner had acted in a timely fashion, he certainly could have exhausted his administrative remedies long before his current claims became moot, and he suffered any irreparable harm.  See Samples v. Wiley, 349 Fed.Appx. 267, 269-270, (10th Cir. 2009) (unpublished opinion) (rejecting habeas petitioner's futility excuse, because "[i]t was entirely possible that [the petitioner] could have completed the BOP administrative process" before he reached his claimed release date).  Therefore, Petitioner's failure to exhaust his administrative remedies cannot be excused on the grounds of mootness or irreparable harm.

---

[6] As previously noted, Petitioner's 27 days of lost good time credit is the only matter that can properly be reviewed in the present habeas corpus proceeding.  See n. 3, supra.

In sum, the Court finds that Petitioner's current habeas corpus claims have been procedurally defaulted because he failed to exhaust his BOP administrative remedies, and it is now too late to do so.[7]  Moreover, Petitioner has failed to show that it would have been futile to exhaust his administrative remedies before seeking federal habeas review of the DHO's decision that deprived him of 27 days of good time credit.  Nor has Petitioner shown any other external cause for his failure to exhaust his administrative remedies in a timely and proper manner.  Failing to show sufficient "cause and prejudice" to excuse his procedural default, Petitioner's current habeas corpus petition must be summarily dismissed with prejudice.[8]

---

[7]  In Rivero, the petitioner's habeas corpus petition was dismissed without prejudice, so he could try to complete the administrative remedies process, and then return to federal court (if necessary).  2011 WL 1262139 at *4.  In that case, the Court noted that the petitioner might be able to present a valid reason for his failure to pursue his administrative remedies in a proper and timely manner.  Here, however, the Court cannot conceive of any argument that would persuade the BOP to allow Petitioner to complete the administrative remedies process at this late date.  Therefore, the Court finds that Petitioner's current claims for relief are procedurally defaulted, and not just unexhausted.

[8]  Even if Petitioner's habeas corpus claims were not procedurally defaulted, they still could not be fully addressed on the merits, simply because they are not adequately explained or supported.  It is worth noting, however, that prison phone regulations have been validated in numerous federal court cases.  See e.g., Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir.) ("[a]lthough in some instances prison inmates may have a right to use the telephone for communication with relatives and friends, prison officials may restrict that right in a reasonable manner, 'subject to rational limitations in the face of legitimate security interest of the penal institution'"), cert. denied, 493 U.S. 895 (1989) (citation omitted); Almahdi v. Ashcroft  310 Fed.Appx. 519, 522 (3rd Cir. 2009) (unpublished opinion) ("prisoners 'ha[ve] no right to unlimited telephone use,'... reasonable restrictions on telephone privileges do not violate their First Amendment rights..." and "regulations limiting telephone use by inmates have been routinely sustained as reasonable") (citation omitted); Johnson v. State of Cal., 207 F.3d 650, 656 (9th Cir. 2000) ("[a]lthough prisoners have a First Amendment right to telephone access, this right is subject to reasonable limitations arising from the legitimate penological and administrative interests of the prison system...." and "[t]here is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls").  See also Beaulieu v. Ludeman, Civil No. 07-1535 (JMR/JSM), (D.Minn. 2008) 2008 WL 2498241 at *19 (civilly committed detainees "do not have a First Amendment right to a specific rate for their telephone calls").

III.     RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.     Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241, (Docket No. 1), be DENIED; and

2.     This action be DISMISSED WITH PREJUDICE.

Dated:        May 30, 2012

_s/ Janie S. Mayeron_
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 13, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.